UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KATERINA GEORGIOU, individually and on
behalf of all others similarly situated,

                              Plaintiffs,

              v.

HARMON STORES, INC.,

                              Defendant.

Case No. 2:22-cv-02861-BMC

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.      MOTION TO DISMISS STANDARD ...................................................................... 2

        A.    Rule 12(b)(1) Motion to Dismiss Standard ................................................... 2

        B.    Rule 12(b)(6) Motion to Dismiss Standard ................................................... 2

II.    THE COURT SHOULD DISMISS GEORGIOU'S CLAIM UNDER RULE 12(b)(1)
       FOR WANT OF ARTICLE III STANDING. ............................................................ 3

III.   NYLL § 191 DOES NOT CREATE A PRIVATE RIGHT OF ACTION. .................... 6

        A.    The Plain Language of NYLL § 191 Does Not Authorize a Private Right of
             Action ........................................................................................................... 6

        B.    There Is Likewise No Basis to Imply a Private Right of Action. ................... 12

IV.   NYLL § 198(1-a)'S LIQUIDATED DAMAGES PROVISION VIOLATES THE
       FOURTEENTH AMENDMENT'S DUE PROCESS CLAUSE WHERE AN
       EMPLOYEE RECEIVED ALL WAGES DUE. ........................................................ 19

CONCLUSION .................................................................................................................. 21

**TABLE OF AUTHORITIES**

| Cases | Page(s) |
|---|---|

Agerbrink v. Model Serv. LLC,
No. 14-cv-7841 (JPO),
2015 WL 3750674 (S.D.N.Y. June 16, 2015) ..........................................................13

Amidax Trading Grp. v. S.W.I.F.T. SCRL,
671 F.3d 140 (2d Cir. 2011).............................................................................2, 4

Ashcroft v. Iqbal,
556 U.S. 662 (2009)......................................................................................2, 3, 5

Aurecchione v. Schoolman Transp. Sys., Inc.,
426 F.3d 635 (2d Cir. 2005)..................................................................................2

Awan v. Durrani,
No. 14-cv-4562,
2015 WL 4000139 (E.D.N.Y. July 1, 2015) .........................................................15

Belizaire v. RAV Investigative & Sec. Servs. Ltd.,
61 F.Supp.3d 336 (S.D.N.Y. 2014) ......................................................................10

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007).........................................................................................2, 3

Bldg. Trades Emps. Educ. Ass'n v. McGowan,
311 F.3d 501, 507 (2d Cir. 2002)..........................................................................15

Bostock v. Clayton Cnty., Ga.,
590 U.S. ---, 140 S.Ct. 1731 (2020)...................................................6, 10, 11, 16

Brian Hoxie's Painting Co. v. Cato-Meridian Cent. Sch. Dist.,
556 N.E.2d 1087 (N.Y. 1990)...............................................................................12

Carrier v. Salvation Army,
667 N.E.2d 328 (N.Y. 1996).................................................................................12

Carter v. HealthPort Techs., LLC,
822 F.3d 47 (2d Cir. 2016).....................................................................................2

Casillas v. Madison Ave. Assocs., Inc.,
926 F.3d 329 (7th Cir. 2019) .................................................................................3

Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,
467 U.S. 837 (1984)...............................................................................................15

Chuk on Chan v. Good Chows Inc.,
  No. 16-cv-2794,
  2017 WL 6550689 (S.D.N.Y. Dec. 21, 2017) ........................................................15

Coley v. Vannguard Urban Improvement Ass'n, Inc.,
  No. 12-CV-5565 (PKC) (RER),
  2018 WL 1513628 (E.D.N.Y. Mar. 27, 2018) .......................................................10

Commonwealth of N. Mar. I. v. Canadian Imperial Bank of Commerce,
  21 N.Y.3d 55 (N.Y. 2013) .................................................................................6, 11

Connecticut Nat. Bank v. Germain,
  503 U.S. 249 (1992) .................................................................................................6

Cruz v. TD Bank, N.A.,
  2 N.E.3d 221 (N.Y. 2013) ......................................................................................12

Dep't of Revenue of Or. v. ACF Indus., Inc.,
  510 U.S. 332 (1994) .................................................................................................8

EEOC v. Vamco Sheet Metals, Inc.,
  No. 13 Civ. 6088 (JPO),
  2014 WL 2619812 (S.D.N.Y. June 5, 2014) .........................................................12

Gerson v. Comm'r of Labor,
  Docket No. PR 10-361, Resolution of Decision,
  (N.Y. Indus. Bd. of Appeals Nov. 5, 2014) ..........................................................14

Golan v. FreeEats.com, Inc.,
  930 F.3d 950 (8th Cir. 2019) .................................................................................19

Harry v. Total Gas & Power N. Am., Inc.,
  889 F.3d 104 (2d Cir. 2018) ....................................................................................2

Harty v. W. Point Realty, Inc.,
  28 F.4th 435 (2d Cir. 2022) .....................................................................................5

Hill v. City of New York,
  136 F.Supp.3d 304, 351 (E.D.N.Y. 2015),
  amended & supplemented by 13-CV-6147 (PKC) (JO),
  2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019) .......................................................15

Hunter v. Planned Bldg. Servs., Inc.,
  No. 715053/2017, 2018 WL 3392476
  (N.Y. Sup. Ct. Queens Cnty. June 20, 2018) ..................................................11, 13

Hussain v. Pakistan Int'l Airlines Corp.,
  No. 11-CV-932, 2012 WL 5289541 (E.D.N.Y. Oct. 23, 2012)............................11

IKEA U.S., Inc.,
      Order under Arts. 4 & 6 of N.Y. Lab Law
      (N.Y. Dep't of Lab, Div. of Lab. Statistics  Oct. 7, 1994) ......................................14

Konkur v. Utica Acad. of Sci. Charter Sch.,
      38 N.Y.3d 38,
      reargument denied, 38 N.Y.3d 1002 (N.Y. 2022) ..................................................13

Lujan v. Defs. of Wildlife,
      504 U.S. 555 (1992)........................................................................................3, 5

Maddox v. Bank of New York Mellon Tr. Co., N.A.,
      19 F.4th 58 (2d Cir. 2021) ..............................................................................2, 5

Maraia v. Orange Reg'l Med. Ctr.,
      63 A.D.3d 1113 (2d Dep't 2009) .........................................................................12

Missouri Pacific Railway Co. v. Tucker,
      230 U.S. 340 (1913)..............................................................................................20

Popermhem v. Comm'r of Labor,
      Docket No. PR 13-153,
      Corrected and Reissued Resolution of Decision
      (N.Y. Indus. Bd. of Appeals Feb. 5, 2016) .........................................................14

Yaniveth R. ex rel. Ramona S. v. LTD Realty Co.,
      27 N.Y.3d 186 (N.Y. 2016) ..................................................................................8

Rosario v. Icon Burger Acquisition, LLC,
      No. 21-CV-4313(JS)(ST),
      2022 WL 198503 (E.D.N.Y. Jan. 21, 2022) .........................................................4

Scott v. Whole Foods Market Group, Inc.,
      No. 18-CV-0086 (SJF) (AKT),
      2019 WL 1559424 (E.D.N.Y. Apr. 9, 2019) ............................................... passim

Sheehy v. Big Flats Cmty. Day, Inc.,
      541 N.E.2d 18 (N.Y.1989)....................................................................................12

Sheng Wang Zhang v. Comm'r of Labor,
      Docket No. PR 12-180, Resolution of Decision
      (N.Y. Indus. Bd. of Appeals July. 13, 2016) ......................................................14

Skidmore v. Swift & Co.,
      323 U.S. 134 (1944).............................................................................................15

Spokeo, Inc. v. Robins,
      578 U.S. 330 (2016)...........................................................................................3, 4

St. Louis, I.M. & S. Ry. Co. v. Williams,
    251 U.S. 63 (1919)..........................................................................................19

State v. Dep't of Justice,
    951 F.3d 84 (2d Cir. 2020),
    cert. dismissed, 141 S.Ct. 1291 (2021) ...........................................................7

Steel Co. v. Citizens for Better Env.,
    523 U.S. 83 (1998)............................................................................................3

Stephens v. U.S. Airways Grp., Inc.,
    644 F.3d 437 (D.C. Cir. 2011) ..........................................................................4

Sw. Tel. & Tel. Co. v. Danaher,
    238 U.S. 482 (1915)........................................................................................19

Matter of Tommy and Tina, Inc. v. Dep't of Consumer Affairs,
    95 A.D.2d 724 (1st Dep't 1983),
    aff'd, 62 N.Y.2d 671 (N.Y. 1984).................................................................15

TransUnion LLC v. Ramirez,
    594 U.S. ---, 141 S.Ct. 2190 (2021) .................................................................3

U.S. v. Worldwide Indus. Enters., Inc.,
    220 F.Supp.3d 335 (E.D.N.Y. 2016) ............................................................6, 11

Vega v. CM & Assoc. Constr. Mgmt., LLC,
    175 A.D.3d 1144 (1st Dep't 2019) ..............................................10, 11, 12, 19

Wah Chan Wong v. Comm'r of Labor,
    Docket No. PR 12-090, Resolution of Decision
    (N.Y. Indus. Bd. of Appeals Oct. 26, 2016) ..................................................14

**Statutes and Rules**

Fed. R. Civ. P. 12.........................................................................................2, 3, 5

L.1967, c. 294, § 5 ...........................................................................................17

L.1967, c. 310, § 1 ...........................................................................................18

L.1997, c. 605, § 4 ...........................................................................................18

L.2009, c. 372, § 1 ...........................................................................................18

L.2010, c. 564, § 7 ...........................................................................................18

L.2014, c. 537, §§ 2, 5 .....................................................................................18

L.2015, c. 2, § 3 ....................................................................................18

L.2015, c. 362, § 2 ................................................................................18

L.2021, c. 397, §§ 3, 5 ..........................................................................18

N.Y. Gen. Laws, Ch. 32, Art. 1 § 11 ....................................................17

N.Y. Lab. Law § 191 ......................................................................*passim*

N.Y. Lab. Law § 218(1)...............................................................13, 14, 19

N.Y. Labor Law § 198 ....................................................................*passim*

Session Law 1890, Ch. 388 §§ 1–2........................................................16

Session Law 1966, Ch. 548 § 191...........................................................17

**Other Authorities**

Merriam-Webster's Dictionary, https://www.merriam-
    webster.com/dictionary/underpay (last visited July 1, 2022) ....................................................7

N.Y. Bill Jacket, 2010 S.B. 8380, Ch. 564 ................................................18

# PRELIMINARY STATEMENT

Plaintiff Katerina Georgiou was a part-time employee at a Harmon Stores, Inc. ("Harmon") store in Mineola, New York.  She has brought a single claim against Harmon on behalf of herself and allegedly similarly situated "manual workers" who claim they should have been paid weekly instead of bi-weekly pursuant to New York Labor Law ("NYLL") Section 191.  Her claim is flawed, and should thus be dismissed, for three reasons: first, this Court does not have jurisdiction over her claim because she has not adequately alleged an injury-in-fact required for Article III standing; second, she lacks an express or implied right to sue under NYLL § 191; and finally, permitting the recovery of liquidated damages in the amount Georgiou seeks in the absence of an actual underpayment would be arbitrary, unreasonable, and oppressive in violation of the Fourteenth Amendment's Due Process Clause.

# STATEMENT OF FACTS

From October 2015 to September 2020, Georgiou worked at Harmon as a cashier and store associate.  (ECF Doc. 1 ¶ 11.)  She alleges that she spent at least 25% of her working time engaged in "manual labor, including tasks such as handling merchandise and stock and tending to the cash register."  (Id.)  Ostensibly, she contends that, as a result of performing this purported manual labor, she was a "manual worker" under NYLL § 191(1)(a) and thus entitled to weekly payment of her wages.  (Id. ¶¶ 2, 11, 15.)  She asserts, however, that she "was paid every other week … during the entirety of her employment with [Harmon], and as a result[,] was not timely paid wages earned in the first workweek of each pay period."  (Id. ¶ 11.)  She superficially alleges that this purported delay in payment injured her because "she was temporarily deprived of money owed to her, and she could not invest, earn interest on, or otherwise use these monies that were rightfully hers," but she does not seek any actual damages based on her alleged temporary deprivation of

money.  (Id.)  On the contrary, she seeks maximum statutory liquidated damages and other relief in the form of "reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198" on behalf of herself and all other manual workers employed by Harmon in New York State from May 16, 2016 to May 16, 2022.  (Id. ¶¶ 12, 21.)  She alleges that amount is a staggering $36 million.  (ECF Doc. 1-1 at 1.)

## ARGUMENT

## I. <u>MOTION TO DISMISS STANDARD</u>

### A. Rule 12(b)(1) Motion to Dismiss Standard

This Court "may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." <u>Aurecchione v. Schoolman Transp. Sys., Inc.</u>, 426 F.3d 635, 638 (2d Cir. 2005) (internal quotation marks and citations omitted). When a Rule 12(b)(1) motion is based on the face of the complaint, the Court must determine whether the complaint "'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" <u>Carter v. HealthPort Techs., LLC</u>, 822 F.3d 47, 56 (2d Cir. 2016) (quoting <u>Amidax Trading Grp. v. S.W.I.F.T. SCRL</u>, 671 F.3d 140, 145 (2d Cir. 2011)); <u>accord</u> <u>Maddox v. Bank of New York Mellon Tr. Co., N.A.</u>, 19 F.4th 58, 65–66 (2d Cir. 2021) (stating that, at the pleadings stage, a plaintiff "must 'plead enough facts to make it plausible that [she] did indeed suffer the sort of injury that would entitle [her] to relief.'" (quoting <u>Harry v. Total Gas & Power N. Am., Inc.</u>, 889 F.3d 104, 110 (2d Cir. 2018))).

### B. Rule 12(b)(6) Motion to Dismiss Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S.

544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted). Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." Id. (citation omitted).

## II.  THE COURT SHOULD DISMISS GEORGIOU'S CLAIM UNDER RULE 12(b)(1) FOR WANT OF ARTICLE III STANDING.

To satisfy the "irreducible constitutional minimum" of Article III standing, a plaintiff bears the burden of establishing (i) "injury in fact," (ii) a "causal connection" between that injury and the complained-of conduct, and (iii) a likelihood "that the injury will be redressed by a favorable decision." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted); accord Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). "[T]he '[f]irst and foremost' of standing's three elements" is the injury-in-fact requirement. Spokeo, 578 U.S. at 338–39 (quoting Steel Co. v. Citizens for Better Env., 523 U.S. 83, 103 (1998)). To satisfy this requirement, a plaintiff must establish a harm that is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 578 U.S. at 339 (quoting Lujan, 504 U.S. at 560). Applying this requirement, the Supreme Court has held that bare statutory violations, devoid of any actual harm, are insufficient to confer Article III standing on a plaintiff, even where the relevant statute authorizes the recovery of statutory damages. See TransUnion LLC v. Ramirez, 594 U.S. ---, 141 S.Ct. 2190, 2205 (2021) ("Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." (quoting Casillas v. Madison Ave. Assocs., Inc., 926 F.3d 329, 332 (7th Cir.

2019) (Barrett, J.))); Spokeo, 578 U.S. at 341 ("[Plaintiff] could not … allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."). Against this backdrop, another judge on this Court, Judge Joanna Seybert, dismissed a nearly identical claim under NYLL § 191 for lack of Article III standing in Rosario v. Icon Burger Acquisition, LLC, No. 21-CV-4313(JS)(ST), 2022 WL 198503 (E.D.N.Y. Jan. 21, 2022).

In Rosario, the plaintiff, like Georgiou, sought "liquidated damages, interest, and attorneys' fees" because of the defendant's alleged failure "to pay him weekly as required by the NYLL." See 2022 WL 198503, at *1, *3. Although the court recognized the economic axiom that "'[m]oney later is not the same as money now,'" the plaintiff's complaint simply did not include any "factual allegations that [he] forewent the opportunity to invest or otherwise use the money to which he was legally entitled." Id. at *3 (quoting Stephens v. U.S. Airways Grp., Inc., 644 F.3d 437, 442 (D.C. Cir. 2011) (Kavanaugh, J., concurring)). Accordingly, the court found that he could not "plausibly claim he suffered a harm sufficiently concrete to establish Article III standing." Id. Because the same is true here, the Court should dismiss Georgiou's Complaint.

In a futile effort to avoid this reality, Georgiou baldly alleges that she "was injured in that she was temporarily deprived of money owed to her, and she could not invest, earn interest on, or otherwise use these monies that were rightfully hers." (See ECF Doc. 1 ¶ 11.) But she has not identified any specific plan to invest or otherwise use the allegedly late payments during the time from when she contends she should have been paid to when she was paid, or how, in fact, she suffered any concrete harm based on any purported lost investment opportunity. As a result, the Court should disregard her conclusory allegation that she was "injured" and find that she failed to plausibly allege Article III standing. See Amidax Trading Grp., 671 F.3d at 146 (refusing to

"'credit a complaint's conclusory statements without reference to its factual context'" on Rule 12(b)(1) motion to dismiss for lack of standing (quoting <u>Iqbal</u>, 556 U.S. at 686)).

Indeed, the Second Circuit has recently dismissed two similar cases because the plaintiffs failed to allege specific facts regarding how the defendant's conduct allegedly harmed them. In <u>Harty v. W. Point Realty, Inc.</u>, a plaintiff claimed that the defendant's website violated the Americans with Disabilities Act and alleged that, "in the near future," he intended to use it "to reserve a guest room." 28 F.4th 435, 443 (2d Cir. 2022). The Second Circuit held that he lacked standing to pursue that claim, reasoning that "[s]uch 'some day' intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the 'actual or imminent injury' that Article III requires." <u>Id.</u> (quoting <u>Lujan</u>, 504 U.S. at 564) (internal quotation marks omitted).

Similarly, in <u>Maddox</u>, a plaintiff alleged that she had suffered emotional distress attributable to the defendant's failure to record a mortgage satisfaction within the time required by New York law. 19 F.4th at 66. She did not, however, explain how the "delayed recordation would cause" such distress. <u>Id.</u> Accordingly, the Second Circuit found that her "perfunctory allegation of emotional distress … [was] insufficient to plausibly allege constitutional standing." <u>Id.</u>

Like the plaintiffs in <u>Harty</u> and <u>Maddox</u>, Georgiou has offered no specifics as to how Harmon's alleged legal violation harmed her. She has not identified a specific investment opportunity that she lost on account of the purported late payment. She has not pleaded that she intended to deposit her paycheck in an interest-bearing account. And she has not alleged that the late-paid money was earmarked for any particular investment or use, such that it resulted in any concrete harm. Because Georgiou has not carried her burden to plausibly allege a concrete harm, the Court should dismiss her Complaint.

## III. NYLL § 191 DOES NOT CREATE A PRIVATE RIGHT OF ACTION.

### A. The Plain Language of NYLL § 191 Does Not Authorize a Private Right of Action.

Georgiou seeks liquidated damages for allegedly late-paid wages, purportedly pursuant to NYLL §§ 191 and 198. (ECF Doc. 1 ¶¶ 19–21.) NYLL § 191 ("Frequency of payments"), however, does not provide for any remedy or civil action; thus, for Georgiou to be allowed to bring her claim, it (or a remedy) necessarily must be authorized by NYLL § 198 ("Costs, remedies"). A review of the plain language of NYLL § 198(1-a) proves that no such claim or remedy exists.

A statute's unambiguous language is the beginning and end of any inquiry into its meaning:

> When interpreting a statute, "a court should always turn first to one, cardinal canon before all others. [The Supreme Court has] stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete."

U.S. v. Worldwide Indus. Enters., Inc., 220 F.Supp.3d 335, 338 (E.D.N.Y. 2016) (quoting Connecticut Nat. Bank v. Germain, 503 U.S. 249, 254 (1992)); accord. Bostock v. Clayton Cnty., Ga., 590 U.S. ---, 140 S.Ct. 1731, 1738 (2020) ("This Court normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment. After all, only the words on the page constitute the law."); Commonwealth of N. Mar. I. v. Canadian Imperial Bank of Commerce, 21 N.Y.3d 55, 60 (N.Y. 2013) (explaining that, when interpreting a statute, "our starting point is the language itself, giving effect to the plain meaning thereof") (internal quotation marks and citation omitted). Here, the unambiguous text of NYLL § 198 (1-a) authorizes employees to bring claims for liquidated damages pertaining only to the "underpayment" of wages, not to the alleged late payment of wages.

The first two sentences of NYLL § 198(1-a) address the New York State Department of Labor Commissioner's authority to bring an enforcement action against employers:

> On behalf of any employee paid less than the wage to which he or she is entitled under the provisions of this article, the commissioner may bring any legal action necessary, including administrative action, to collect such claim and as part of such legal action, in addition to any other remedies and penalties otherwise available under this article, the commissioner shall assess against the employer the full amount of any such underpayment, and an additional amount as liquidated damages, unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law. Liquidated damages shall be calculated by the commissioner as no more than one hundred percent of the total amount of wages found to be due, except such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of section one hundred ninety-four of this article.

NYLL § 198(1-a). The third sentence authorizes civil lawsuits by employees or the Commissioner:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due, except such liquidated damages may be up to three hundred percent of the total amount of the wages found to be due for a willful violation of section one hundred ninety-four of this article.

Id.

As its plain text demonstrates, NYLL § 198(1-a) permits an employee to sue "upon a wage claim" to recover "the full amount of any such underpayment." NYLL § 198(1-a). The term "underpayment" is not defined in NYLL § 198(1-a). But given the commonly understood meaning of the prefix "under," it is not surprising that the Merriam-Webster dictionary definition of "underpay" is "to pay less than what is normal or required." Underpay, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/underpay (last visited July 1, 2022); see also State v. Dep't of Justice, 951 F.3d 84, 106 (2d Cir. 2020), cert. dismissed, 141 S.Ct. 1291

(2021) (providing that words in a statute that are not "statutorily defined" are "properly construed according to [their] contemporary dictionary definition") (citations omitted); <u>Yaniveth R. ex rel. Ramona S. v. LTD Realty Co.</u>, 27 N.Y.3d 186, 192 (N.Y. 2016) ("In the absence of a statutory definition, we construe words of ordinary import with their usual and commonly understood meaning, and in that connection have regarded dictionary definitions as useful guideposts in determining the meaning of a word or phrase.") (internal quotation marks and citation omitted). Georgiou does not allege that she was paid less than what was required. Therefore, she does not seek to recover an "underpayment." Stated differently, the ordinary public meaning of "underpayment" compares the amount of payment received against the required amount. It says nothing about the timeliness of any such payment.

That "underpayment" pertains to amount, and not timeliness, is further supported by the plain text of NYLL § 198(1-a) in other ways. For example, the first sentence of NYLL § 198(1-a) provides that the Commissioner shall, in any legal action brought by the Commissioner "[o]n behalf of any employee paid less than the wage to which he or she is entitled," "assess against the employer the full amount of any such underpayment." NYLL § 198(1-a). The New York Legislature's use of the term "such" to modify "underpayment" is a clear reference to the phrase "paid less than the wage to which he or she is entitled" appearing earlier in the same sentence. Thus, the Legislature's use of the term "such" demonstrates that "underpayment" and "paid less than the wage to which he or she is entitled" have the same meaning. As a result, "underpayment" cannot mean "late paid." <u>See</u> <u>Dep't of Revenue of Or. v. ACF Indus., Inc.</u>, 510 U.S. 332, 342 (1994) (referring to the "normal rule of statutory construction" that "identical words used in different parts of the same act are intended to have the same meaning") (internal quotation marks and citation omitted).

The same conclusion flows from a close reading of the third sentence of NYLL § 198(1-a). That sentence provides, in part, that "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law," a prevailing employee can recover "an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due." NYLL § 198(1-a). That language confirms that the phrases "underpayment of wages" and "the wages found to be due" have the same meaning. Again, then, "underpayment" must mean a payment of wages that is "less than … required"—not merely a late payment of the required amount.

Likewise, the reference to a "wage claim" in the beginning of the third sentence of NYLL § 198(1-a) confirms this reading. A "wage claim" must be one that seeks to recover an "underpayment," and, as explained above, by reference to the first sentence in NYLL § 198(1-a), an "underpayment" means an employee was "paid less than the wage to which he or she is entitled." Accordingly, the "wage claim" referenced in the third sentence of NYLL § 198(1-a) is one that seeks the difference between the "the wage to which [an employee] is entitled" and the amount that he or she received. That is not Georgiou's claim here. She does not allege any difference between the amount of wages she was paid and the amount of wages she was owed, and therefore, she does not seek a remedy for an "underpayment" pursuant to NYLL § 198(1-a).

Finally, the third sentence confirms that an "underpayment" is a prerequisite for a private suit. Specifically, that sentence does not authorize employees to sue for liquidated damages generally; rather, it permits them to sue for an "underpayment" and, in the context of such a suit, to recover "an additional amount" (i.e., a sum *in addition* to the underpayment) in the form of liquidated damages. See id. Stated differently, no underpayment, no liquidated damages. As such, Georgiou's anticipated argument that statutory liquidated damages in an amount equal to 100% of

the alleged late-paid wages are automatic (upon the late payment) and therefore constitutes an "underpayment" is of no moment.

Put simply, application of the "plain and settled" meaning of "underpayment" demonstrates that it does not encompass late, but fully, paid wages. "Less than" does not mean "later than." See Bostock, 140 S.Ct. at 1743 ("At bottom, these cases involve no more than the straightforward application of legal terms with plain and settled meanings."). In the Supreme Court's words, "when the meaning of the statute's terms is plain," a court's "job is at an end." Bostock, 140 S.Ct. at 1749. Because the New York Legislature chose to permit a claim under NYLL § 198(1-a) only for an "underpayment," not a late payment, Harmon respectfully submits that this Court should enforce the plain language enacted by the New York Legislature. See id. at 1739 (explaining that Congress "could have" written statute differently in several ways, "[b]ut none of this is the law we have"); see also id. at 1738 ("If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives. And we would deny the people the right to continue relying on the original meaning of the law they have counted on to settle their rights and obligations.") (citation omitted).

Notably, before the First Department's decision in Vega v. CM & Assoc. Constr. Mgmt., LLC, 175 A.D.3d 1144 (1st Dep't 2019), the majority of courts that considered this issue found that NYLL § 198(1-a) did not create a private right of action to recover liquidated damages in cases where a wage payment was merely delayed. See, e.g., Coley v. Vannguard Urban Improvement Ass'n, Inc., No. 12-CV-5565 (PKC) (RER), 2018 WL 1513628, at *13 (E.D.N.Y. Mar. 27, 2018) (denying liquidated damages for late wages under § 191 because § 198 does not provide remedy); Belizaire v. RAV Investigative & Sec. Servs. Ltd., 61 F.Supp.3d 336, 360 n.22

(S.D.N.Y. 2014) (noting that § 198(1-a)'s liquidated damages provision "is geared to afford relief for unpaid wages, not for late-paid wages") (citation omitted); Hussain v. Pakistan Int'l Airlines Corp., No. 11-CV-932, 2012 WL 5289541, at *3 (E.D.N.Y. Oct. 23, 2012) (holding that § 198 provides liquidated damages for "underpayment of wages" but not for "private recovery" for "technical violations" of pay frequency requirements); Hunter v. Planned Bldg. Servs., Inc., No. 715053/2017, 2018 WL 3392476, at *2–3 (N.Y. Sup. Ct. Queens Cnty. June 20, 2018) (interpreting § 198(1-a) to provide a private right of action to recover "nonpayment of wages," not "for [a] violation of NYLL § 191(1)(a)(i) where the plaintiff has not alleged unpaid wages exclusive of liquidated damages").

In Vega, however, the First Department summarily rejected this line of cases, finding an express private right of action to enforce NYLL § 191(1)(a)(i).  See 175 A.D.3d at 1146.  The Vega court held that the term "underpay" encompassed situations involving late payment.  Id. at 1145.  Vega recognized that settled statutory interpretation principles require courts to remain faithful to the "usual and commonly understood meaning" of the relevant statutory text and, in fact, quoted the Merriam-Webster definition of "underpay."  Id.  But it then ignored that definition by treating "less than" as synonymous with "later than."  Thus, Vega impermissibly "read into the statute that which was specifically omitted by the Legislature."  See Canadian Imperial Bank, 21 N.Y.3d at 62.

Similarly, in Scott v. Whole Foods Market Group, Inc., the court found a private right of action to enforce NYLL § 191(1)(a) without any analysis of the statutory text.  No. 18-CV-0086 (SJF) (AKT), 2019 WL 1559424, at *2–3 (E.D.N.Y. Apr. 9, 2019).  That failure to analyze the plain language of the statute is reason alone to reject Scott.  See, e.g., Bostock, 140 S.Ct. at 1738; Worldwide Indus. Enters., 220 F.Supp.3d at 338; Canadian Imperial Bank, 21 N.Y.3d at 60.

Respectfully, <u>Vega</u> and <u>Scott</u> are inconsistent with the text of NYLL § 198(1-a). Thus, this Court should decline to follow those decisions, remain faithful to the statutory text, and find that Georgiou does not have a private right of action to enforce NYLL § 191's pay frequency provision.

**B.     There Is Likewise No Basis to Imply a Private Right of Action.**

In addition to finding an express right of action to bring pay frequency claims, <u>Scott</u> and <u>Vega</u> also found an implied right of action to enforce NYLL § 191's pay frequency requirements. <u>Vega</u>, 175 A.D.3d at 1146; <u>Scott</u>, 2019 WL 1559424, at *3–4. That conclusion, too, is incorrect.

To determine whether a private right of action is "'fairly implied' in [a] statute and its legislative history, New York courts consider '(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether the creation of such a right would be consistent with the legislative scheme.'" <u>EEOC v. Vamco Sheet Metals, Inc.</u>, No. 13 Civ. 6088 (JPO), 2014 WL 2619812, at *7 (S.D.N.Y. June 5, 2014) (quoting <u>Maraia v. Orange Reg'l Med. Ctr.</u>, 63 A.D.3d 1113, 1116 (2d Dep't 2009)). Of these three factors, courts interpreting New York law have recognized that:

> The third factor "'is generally the most critical.'" [<u>Carrier v. Salvation Army</u>, 667 N.E.2d 328, 329 (N.Y. 1996)] (quoting <u>Brian Hoxie's Painting Co. v. Cato-Meridian Cent. Sch. Dist.</u>, 556 N.E.2d 1087, 1089 (N.Y. 1990)). This is because "the Legislature has both the right and the authority to select the methods to be used in effectuating its goals, as well as to choose the goals themselves. Thus, regardless of its consistency with the basic legislative goal, a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the over-all statutory scheme." <u>Sheehy v. Big Flats Cmty. Day, Inc.</u>, 541 N.E.2d 18, 21 (N.Y.1989). Accordingly, *New York courts have "declined to recognize a private right of action in instances where the Legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself."* [<u>Cruz v. TD Bank</u>,

<u>N.A.</u>, 2 N.E.3d 221, 226 (N.Y. 2013)] (internal quotation marks and brackets omitted).

<u>Agerbrink v. Model Serv. LLC</u>, No. 14-cv-7841 (JPO), 2015 WL 3750674, at *3 n.5 (S.D.N.Y. June 16, 2015) (emphasis added).

Here, the New York Legislature "specifically considered and expressly provided for enforcement mechanisms" for violations of NYLL § 191—namely, it enacted NYLL § 218(1), which provides in relevant part:

> If the commissioner determines that an employer has violated a provision of article six (payment of wages)[1] [or other employment-related laws], the commissioner shall issue to the employer an order directing compliance therewith…. Where the violation is for a reason other than the employer's failure to pay wages, benefits or wage supplements found to be due, the order shall direct payment to the commissioner of a civil penalty in an amount not to exceed one thousand dollars for a first violation, two thousand dollars for a second violation or three thousand dollars for a third or subsequent violation.

NYLL § 218(1); <u>see</u> also, e.g., <u>Planned Bldg. Servs.</u>, 2018 WL 3392476, at *2 (rejecting private right of action theory and noting that civil penalties are available against employers through Commission of Labor. Indeed, the Court of Appeals recently held that an employee did not have an implied private right of action to enforce NYLL § 198-b, which prohibits wage kickbacks, because the "statutory scheme … expressly provides two robust enforcement mechanisms," including an administrative action under § 218, and because the Legislature specifically enumerated private rights of actions to enforce provisions of Article Six in NYLL § 198 without any reference to NYLL § 198-b. <u>See</u> <u>Konkur v. Utica Acad. of Sci. Charter Sch.</u>, 38 N.Y.3d 38, 42–45, <u>reargument denied,</u> 38 N.Y.3d 1002, (N.Y. 2022). The same is true here: the New York Legislature decided that the Commissioner "shall direct payment" of civil penalties by employers

---

[1] Article Six of the New York Labor Law includes §§ 191 and 198.

who violate NYLL § 191 and chose ***not*** to authorize employees to recover liquidated damages under NYLL § 198(1-a) for the same conduct. As a result, the Court should respect the Legislature's judgment and not imply a private right of action to enforce NYLL § 191.

Additionally, the Commissioner of Labor and the State's Industrial Board of Appeals (which reviews orders issued by the Commissioner) have recognized, over and over, that violations of § 191's pay frequency requirement fall within § 218(1)'s category of a violation "other than … failure to pay wages." See, e.g., IKEA U.S., Inc., Order under Arts. 4 & 6 of N.Y. Lab Law (N.Y. Dep't of Lab, Div. of Lab. Statistics  Oct. 7, 1994) (assessing civil penalty pursuant to § 218 for violations of § 191(1)(a)); Wah Chan Wong v. Comm'r of Labor, Docket No. PR 12-090, Resolution of Decision, at 13 (N.Y. Indus. Bd. of Appeals Oct. 26, 2016) (affirming $1,000 civil penalty for violation of § 191(1)(a)); Sheng Wang Zhang v. Comm'r of Labor, Docket No. PR 12-180, Resolution of Decision, at 13 (N.Y. Indus. Bd. of Appeals July. 13, 2016) (affirming $1,000 civil penalty for violation of § 191(1)(a)); Popermhem v. Comm'r of Labor, Docket No. PR 13-153, Corrected and Reissued Resolution of Decision, at 12–13 (N.Y. Indus. Bd. of Appeals Feb. 5, 2016) (affirming $1,000 civil penalty for violation of § 191(1)(a)); Gerson v. Comm'r of Labor, Docket No. PR 10-361, Resolution of Decision, at 8 (N.Y. Indus. Bd. of Appeals Nov. 5, 2014) (affirming $1,000 civil penalty for violation of § 191(1)(d), a pay frequency requirement pertaining to "clerical and other worker[s]").[2]  In other words, every single one of these decisions treated the § 191 violation as one "other than the employer's failure to pay wages" and assessed a civil penalty pursuant to § 218(1) consistent with that category of violations.  Not one of them imposed liquidated damages—pursuant to §§ 198(1-a), 218, or any other provision of the Labor Laws—for

---

[2] Copies of the decisions cited in this paragraph are attached to the Ruzal Declaration as Exhibits A to E.

the § 191 violation. Thus, consistent with the plain language of these statutes, the Commissioner

of Labor and the Industrial Board of Appeals routinely interpret § 218, rather than § 198(1-a), as

the remedy for violations of § 191's frequency of pay requirements. And their interpretation

deserves deference. See Bldg. Trades Emps. Educ. Ass'n v. McGowan, 311 F.3d 501, 507 (2d Cir.

2002) ("We defer to a state agency's interpretation of its own regulations, unless the interpretation

is arbitrary or capricious.") (citation omitted); Matter of Tommy and Tina, Inc. v. Dep't of

Consumer Affairs, 95 A.D.2d 724, 724 (1st Dep't 1983), aff'd, 62 N.Y.2d 671 (N.Y. 1984)

("Absent an arbitrary and capricious regulation or interpretation of said regulations, courts should

defer to the agency."). The above-cited law suggests a level of deference akin to that in the case

of Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc. See 467 U.S. 837, 844 (1984)

(holding an arbitrary and capricious standard should apply to federal agencies interpreting federal

law). Even under the more permissive standards of Skidmore v. Swift & Co., 323 U.S. 134 (1944),

the Commissioner of Labor and Industrial Board decisions would be owed deference on account

of the consistency of those decisions over the course of time, the validity of their reasoning in

interpreting the text of the statute, and other persuasive factors. See id. at 140.

In sum, there is no basis for this Court to upend the Legislature's chosen remedial scheme

(which the Commissioner of Labor and the Industrial Board of Appeals have applied time and time

again) and supplant the Legislature's judgment with its own.[3] Ultimately, the Scott court's concern

---

[3] Notably, this is not the only place in the New York Labor Law where the Legislature chose to create enforcement mechanisms to be pursued by the State instead of private remedies to be pursued by aggrieved employees. See, e.g., Awan v. Durrani, No. 14-cv-4562, 2015 WL 4000139, at *9 n.12 (E.D.N.Y. July 1, 2015) ("[N]o private statutory right of action exists to enforce [NYLL § 162]."); Hill v. City of New York, 136 F.Supp.3d 304, 351 (E.D.N.Y. 2015), amended & supplemented by 13-CV-6147 (PKC) (JO), 2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019) (same) (citations omitted); Chuk on Chan v. Good Chows Inc., No. 16-cv-2794, 2017 WL 6550689, at *2 (S.D.N.Y. Dec. 21, 2017) (noting that "the NYLL provides only the Commissioner of Labor, not employees themselves, with a cause of action to enforce" § 195's requirement of annual wage statements when those were required prior to February 2015) (collecting cases).

that the absence of a "private right of action under § 191 redressable under § 198" would "leave[] an aggrieved employee with no recourse" against violations of § 191, <u>Scott</u>, 2019 WL 1559424 at *2, 4,  was neither correct as a matter of law nor a sound basis for implying a private right of action.  <u>See, e.g.</u>, <u>Bostock</u>, 140 S.Ct. at 1745 (beliefs about what "the law was meant to do, or should do" do not "allow [the court] to ignore the law as it is"); <u>id.</u> at 1737 ("When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest.").

Further, the legislative history demonstrates that that the Legislature never intended to create a private right of action for liquidated damages to redress an alleged pay frequency violation. A weekly pay requirement was first enacted in the New York Law in 1890.  That law stated:

> Every manufacturing … [and] mercantile … corporation … shall pay weekly, each and every employee engaged in its business, the wages earned by such employee within six days of the date of such payment…. Any corporation violating any of the provisions of this act shall be liable to a penalty not exceeding fifty dollars and not less than ten dollars for each violation, to be paid to the people of the state and which may be recovered in a civil action; provided an action for such violation is commenced within thirty days from the date thereof.  The factory inspectors of this state, their assistants or deputies may bring an action in the name of the people of the state as plaintiff against any corporation which neglects to comply with the provisions of this act for a period of two weeks, after having been notified in writing by such inspectors, assistants or deputies, that such action will be brought.

Session Law 1890, Ch. 388 §§ 1–2.[4]  Thus, from the beginning, the remedy for violation of the weekly pay requirement was that a corporation would pay a penalty to the state.  The Legislature authorized the government actors tasked with enforcing the weekly pay provision, the factory inspectors, to seek those penalties.  That same conceptual regulatory scheme has existed since that first law was enacted, and it still exists today.

---

[4] A copy of this statute is attached to the Ruzal Declaration as Exhibit F.

On May 13, 1897, the weekly pay requirement was codified in the Labor Laws, with similar provisions. N.Y. Gen. Laws, Ch. 32, Art. 1 § 11.[5] That version of the law specifically stated:

> Penalty for violation of preceding sections.—If a corporation or joint stock association, its lessee or other person carrying on the business thereof, shall fail to pay the wages of an employe[e] as provided in this article, it shall forfeit to the people of the state the sum of fifty dollars for each such failure, to be recovered by the factory inspector in his name of office in a civil action; but an action shall not be maintained therefor, unless the factory inspector shall have given to the employer at least ten days' written notice, that such an action will be brought if the wages due are not sooner paid as provided in this article.

Id. Again, in that iteration of the law, the penalty provision was a payment to the state. Significantly, the statute used similar language to the present-day version, i.e., that an action can be brought only "if the wages due are not sooner paid." Id. The weekly pay requirement was re-codified in 1966 as § 191, and again, as with the prior statutes, a private right of action was not provided. See Session Law 1966, Ch. 548 § 191.[6]

Section 198 of the NYLL was first enacted in 1966. In its original form, it was lean as compared with the modern version. It stated:

> § 198. Costs, remedies. 1. In any action instituted upon a wage claim by an employee or the commissioner in which the employee prevails, the court may allow such employee in addition to ordinary costs, a reasonable sum, not exceeding fifty dollars for expenses which may be taxed as costs. No assignee of a wage claim, except the commissioner, shall be benefited by this provision.
> 2. The remedies provided by this article may be enforced simultaneously or consecutively so far as not inconsistent with each other.

Since then, § 198 has been amended eight separate times. Through every amendment, the Legislature has never added language authorizing a private litigant to bring suit for a violation of § 191 or otherwise pursue liquidated damages for the late payment of wages. See L.1967, c. 294,

---

[5] A copy of this statute is attached to the Ruzal Declaration as Exhibit G.

[6] A copy of this statute is attached to the Ruzal Declaration as Exhibit H.

§ 5; L.1967, c. 310, § 1; L.1997, c. 605, § 4, eff. Nov. 16, 1997; L.2009, c. 372, § 1, eff. Nov. 24, 2009; L.2010, c. 564, § 7, eff. April 9, 2011; L.2014, c. 537, §§ 2, 5, eff. Feb. 27, 2015; L.2015, c. 2, § 3, eff. Feb. 27, 2015; L.2015, c. 362, § 2, eff. Jan. 19, 2016; L.2021, c. 397, §§ 3, 5, eff. Aug. 19, 2021.[7]

In 2010, the Legislature passed the Wage Theft Prevention Act ("WTPA"), which, in part, amended § 198(1-a) to address the problem of "wage theft" by employers. Specifically, § 198(1-a) was amended to "[i]ncrease[ ] liquidated damages on unpaid wages from 25% to 100%." N.Y. Bill Jacket, 2010 S.B. 8380, Ch. 564, Introducer's Statement, at 000006 (Jun. 29, 2021).[8] The Commissioner of Labor supported the passage of the WTPA because of the harm that "wage theft" caused throughout the economy. Specifically, the Commissioner characterized the WTPA as "increas[ing] penalties for violation of various provisions of the Labor Law intended to protect workers from *nonpayment and underpayment* of wages." Id., Mem. of Comm'r to the Governor, at 000009 (Dec. 10, 2010) (emphasis added). In other words, the Commissioner of Labor recognized that certain provisions of the NYLL are intended to address violations involving "nonpayment and underpayment," while others are intended to address other types of violations that do not involve nonpayment or underpayment. Further, the Commissioner stated that the WTPA was intended to penalize employers that (i) paid employees less than the minimum wage or their agreed-upon wage; (ii) created a competitive disadvantage for law-abiding employers by reducing the cost of their own business; and (iii) hurt the state and local economy by reducing wages that would otherwise "make their way into the economy and generate income and sales taxes." Id. at 000010. Again, this history confirms that the Legislature designed the enhanced

---

[7] A copy of these amendments is attached to the Ruzal Declaration as Exhibit I.

[8] A copy of this document is attached to the Ruzal Declaration as Exhibit J.

penalties in § 198(a-1) to deter the non-payment of wages, ***not*** the routine payment of wages on a bi-weekly pay schedule, as Georgiou alleges here.

Given the absence of any evidence whatsoever that the Legislature has ever intended to create a private right of action to pursue liquidated damages for allegedly late-paid wages, the courts in <u>Vega</u> and <u>Scott</u> wrongly inferred that the legislative purpose of §§ 191 and 198(1-a) would be furthered by finding an implied right. In combination with those courts' failures to consider § 218(1), their misapprehension of the legislative purpose of these statutes is another reason to reject their holdings regarding the creation of an implied right of action.

## IV. NYLL § 198(1-a)'S LIQUIDATED DAMAGES PROVISION VIOLATES THE FOURTEENTH AMENDMENT'S DUE PROCESS CLAUSE WHERE AN EMPLOYEE RECEIVED ALL WAGES DUE.

Georgiou's proffered misinterpretation of NYLL § 198(1-a) as permitting an employee to recover liquidated damages in the amount of 100% of late-paid wages, even though she was ultimately paid those wages in full, violates the Fourteenth Amendment's Due Process Clause. "The Supreme Court long ago held that a penalty assessed pursuant to a statute violates the Due Process Clause if it is 'so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.'" <u>Golan v. FreeEats.com, Inc.</u>, 930 F.3d 950, 962 (8th Cir. 2019) (quoting <u>St. Louis, I.M. & S. Ry. Co. v. Williams</u>, 251 U.S. 63, 67 (1919)); <u>see also</u>, <u>e.g.</u>, <u>Sw. Tel. & Tel. Co. v. Danaher</u>, 238 U.S. 482, 491 (1915) (finding that imposing statutory "penalties aggregating $6,300" on a telephone company that canceled a subscriber's service "was so plainly arbitrary and oppressive as to be nothing short of a taking of its property without due process of law").

Here, Georgiou has not alleged *any* actual harm, but she seeks to recover, on behalf of herself and a putative class, a staggering *$36 million*. (ECF Doc. 1-1 at 1; <u>see also</u> ECF Doc. 1 ¶ 8

("Plaintiff alleges that the total claims of individual members of the proposed Class … are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.").)  The Supreme Court found a remarkably less drastic disparity between actual damages and statutorily mandated liquidated damages inconsistent with due process.

In <u>Missouri Pacific Railway Co. v. Tucker</u>, a railway charged a consignee $3.02 more than a statutory rate schedule allowed to transport petroleum products. 230 U.S. 340, 346 (1913).  The consignee sued seeking $500 in statutory liquidated damages.  <u>Id.</u>  The Supreme Court found that the statute's liquidated damages provision violated due process because the amount was "not only grossly out of proportion to the possible actual damages, but [was] so arbitrary and oppressive that its enforcement would be nothing short of the taking of property without due process of law."  <u>Id.</u> at 351.  In finding a due process violation, the Court noted that the liquidated damages provision was "not proportioned to the actual damages," unlike statutes allowing "double or treble damages," which the Court noted "properly could have been done."  <u>Id.</u> at 348.  The same is true here.

Properly construed, NYLL § 198(1-a) permits the recovery of double damages—namely, the recovery of the amount of an underpayment as actual damages plus an additional amount equal to 100% of the amount of the underpayment as liquidated damages.  <u>See</u> NYLL § 198(1-a).  So, if an employee was underpaid by $500, she may recover $500 in actual damages and an additional $500 in liquidated damages. Here, by contrast, Georgiou does not seek double the amount of an actual underpayment or double the amount of any (unalleged) actual damages. Instead, she seeks 100% of her late-paid wages as liquidated damages in the absence of an underpayment or any actual damages. Because Georgiou was paid all of the wages owed her for each work week of her employment, the amount she seeks is untethered to the actual harm, if any, Georgiou may have

suffered, and is arbitrary and greatly exceeds the bounds of reasonableness prescribed by due process.  Thus, her claim violates the Fourteenth Amendment and should be dismissed.

## CONCLUSION

The Court should dismiss Georgiou's Complaint with prejudice.


New York, New York
July 13, 2022                               EPSTEIN BECKER & GREEN, P.C.

By: /s/ *Jeffrey H. Ruzal*
_____
Jeffrey H. Ruzal
875 Third Avenue
New York, New York 10022
Tel: 212.351.4500
Fax: 212.878.8600
jruzal@ebglaw.com

Francesco A. DeLuca
125 High Street, Suite 2114
Boston, Massachusetts 02110
Tel: 617.603.1100
Fax: 617.249.1573
fdeluca@ebglaw.com

*Attorneys for Defendant Harmon Stores, Inc.*