```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
 KATERINA GEORGIOU, individually and      :
 on behalf of all others similarly situated,   :   MEMORANDUM DECISION AND
                                          :   ORDER
                          Plaintiff,      :
                                          :   2:22-cv-02861-BMC
             - against -                  :
                                          :
                                          :
 HARMON STORES, INC.,                     :
                                          :
                          Defendant.      :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff seeks liquidated damages on behalf of herself and others similarly situated based on allegations that defendant paid her and her proposed class bi-weekly instead of weekly as required by New York Labor Law § 191. Defendant has moved to dismiss the claim, arguing that (1) plaintiff lacks standing; (2) plaintiff does not have a private right of action for violations of NYLL § 191; and (3) permitting plaintiff to recover $36 million in liquidated damages for failing to comply with NYLL § 191 would violate the Fourteenth Amendment's Due Process Clause. I deny the motion because: (1) the time delay in receiving wages owed is a sufficient injury to confer standing; (2) the New York authority, although scant, allows a private cause of action under NYLL § 191; and (3) defendant's due process challenge is premature.

## BACKGROUND

Plaintiff worked as a cashier and store associate at Harmon Face Values in Mineola. She spent at least 25% of her time engaged in manual labor within the meaning of the NYLL, performing tasks that included tending to the cash register and handling merchandise and stock.

She and others similarly situated were paid bi-weekly in violation of NYLL § 191(1)(a), which requires that manual workers be paid weekly.

Plaintiff claims that she was injured by defendant's failure to pay weekly wages because she was unable to "invest, earn interest on, or otherwise use" the money owed to her. Plaintiff does not, however, seek any actual damages based on the temporary deprivation of these payments. She instead alleges that the class members are owed approximately $36 million in liquidated damages as provided for in NYLL § 198.

## DISCUSSION

**I.     Plaintiff has standing**

Defendant argues that plaintiff lacks Article III standing because she has failed to establish a "concrete and particularized" harm that is "actual or imminent." Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016). Defendant primarily relies on TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021), in which the Supreme Court clarified that constitutional standing does not exist simply because a technical violation triggers a statutory damage award. A plaintiff must instead demonstrate an actual and concrete injury to have standing to pursue a claim under the statute.

Ramirez does not control this case. Plaintiff alleges that as a result of defendant's failure to make timely payments as required by the NYLL, she "was injured in that she was temporarily deprived of money owed to her, and she could not invest, earn interest on, or otherwise use these monies that were rightfully hers." This is sufficient to plead an actual and concrete injury. Even without that allegation, the deprivation of money to which one is legally entitled is an actual and concrete injury *per se*.

2

"Money later is not the same as money now." Stephens v. U.S. Airways Grp., Inc., 644 F.3d 437, 442 (D.C. Cir. 2011) (Kavanaugh, J., concurring). The "delay in receiving wages stripped plaintiff[] of the opportunity to use funds to which [she was] legally entitled" resulting in an "injury sufficiently analogous to harms traditionally recognized at common law." See Levy v. Endeavor Air Inc., No. 21-cv-4387, 2022 WL 16645829, at *4 (E.D.N.Y. Nov. 1, 2022) ("Plaintiffs' claim that [defendant's] deprivation of the time value of their wages was in violation of New York statutory law is enough to establish Article III standing.").

Plaintiff need not identify a specific forfeited investment opportunity or interest-bearing account. Not having money you're supposed to have means that the time value of money has decreased. That is sufficient to establish an actual and concrete injury. See Caul v. Petco Animal Supplies, Inc., No. 20-cv-3534, 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021) ("[T]he late payment of wages is a concrete harm."); Porsch v. LLR, Inc., 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019) ("[T]emporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing."). Plaintiff was forced to forego "the opportunity to invest or otherwise use the money to which [s]he was legally entitled." See Rosario v. Icon Burger Acquisition, LLC, No. 21-cv-4313, 2022 WL 198503, at *3 (E.D.N.Y. Jan. 21, 2022).

Defendant's attempt to analogize to ADA cases, like Harty v. W. Point Realty, Inc., 28 F.4th 435, 443 (2d Cir. 2022), which hold that a plaintiff cannot establish standing by alleging a vague intent to visit an allegedly non-compliant website "someday" and "in the near future," is also misplaced. Here, plaintiff's standing is not based on something that might or might not happen in the future, but on actual harm suffered as a result of defendant's failure to pay timely wages. See Levy, 2022 WL 16645829, at *4 ("[T]he loss of the time value of the money owed

3

to plaintiff is not a harm that *might* occur, but one that *has* occurred; it is not a harm that *might* materialize, but one that *has* materialized."). Acceptance of defendant's argument would leave a lender, seeking to collect on a defaulted note, without standing to sue unless the lender could show what it would have done with the money had the borrower timely paid. It is obvious that a lender does not have to show that; deprivation of money owed is enough.

## II. Plaintiff has a private right of action for violations of NYLL § 191

Defendant also argues that NYLL §§ 191 and 198 do not provide plaintiff with a private right of action to assert a claim for untimely wage payments. NYLL § 191(1)(a) states that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned."

In considering this argument, it is important to understand the fractured and patchwork structure of the New York Labor Law. The most basic requirements – minimum wage and overtime – are set forth in Article 19, the "Minimum Wage Act."[1] To find other requirements of employment, one then must look back to Articles 5 and 6. Article 5 sets forth, among other things, the number of work hours in a day (§ 160); the requirement of one day off (§ 161); and time allowed for meals (§ 162). Article 6 sets forth a variety of worker's rights in various sections and subsections – allowed deductions from wages (§ 193); wage notice and statement requirements (§ 195); sick leave requirements (§ 196-b); prohibition of gratuities to the managers (§ 196-d); prohibition of kickbacks (§ 198-b); and, as relevant here, the requirement of weekly wage payments for manual workers (§ 191).

---

[1] The New York Legislature did not enact specific overtime regulations. The Legislature instead delegated the authority to enact such regulations to the New York State Commissioner of Labor, who then promulgated specific overtime regulations. See Rocha v. Bakhter Afghan Halal Kebab, Inc., 44 F. Supp. 3d 337, 350-51 (E.D.N.Y. 2014).

4

Each of these Articles has different enforcement mechanisms applied to some, but not all, of the requirements set forth in each of its sections. Some, but not all, enforcement mechanisms are contained in separate Articles than the one creating the right. Thus, the enforcement provisions have in common that the Commissioner of Labor may bring an action for their enforcement, but that enforcement mechanism is spread throughout various Articles. Many of the rights created, but not all, are also subject to criminal prosecution by the Attorney General. Beyond that, some of the rights are also enforceable in an action brought by the employee, but, as a recent decision of the New York Court of Appeals shows, some are not.

In Konkur v. Utica Academy of Science Charter School, 38 N.Y.3d 38, 165 N.Y.S.3d 1 (2022), the New York Court of Appeals considered NYLL § 198-b, contained within Article 6. Section 198-b prohibits employers from requiring payment of kickbacks out of their employees' paychecks. It contains no express private enforcement mechanism, although the Commissioner of Labor may enforce it pursuant to the catch-all section of NYLL § 218, part of Article 7, the "General Provisions" of the Labor Law.

Konkur sued under § 198-b based on his employer's demand that he pay over a portion of his wages to his employer's favorite religious organization. In holding that § 198-b contains no private right of action and therefore directing dismissal of the case, the Court of Appeals held that even though Konkur satisfied two of the three factors for implying a private right of action – plaintiff was part of the class for which the statute was enacted, and a private right of action would promote the legislative purpose – he had not satisfied the third factor – that an implied right of action was consistent with the legislative scheme of enforcement.[2] Konkur, 38 N.Y.3d

---

[2] Under New York law, three factors must be satisfied before a court will recognize an implied private right of action: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a

5

at 44, 165 N.Y.S.3d at 6 (citation omitted). The Court held that because the statute expressly granted the Attorney General and the Commissioner of Labor the ability to seek criminal and civil penalties, respectively, for its violation, adding on a third enforcement mechanism – private enforcement by employees – would be contrary to legislative intent: "Where the legislature intended for an article 6 provision to be enforced individually, it expressly provided a private right of action." Id. Central to the court's holding was that a kickback violation did not give rise to a "wage claim" under Article 6, § 198(1-a), which sets forth "Costs and Remedies" for an "action instituted upon a wage claim." Id.

Three years prior to the decision in Konkur, the Appellate Division, First Department, had decided a case that is on all fours with the instant case. In Vega v. CM & Assocs. Constr. Mgmt., LLC, 175 A.D.3d 1144, 1145, 107 N.Y.S.3d 286, 288 (1st Dep't 2019), the First Department found a private right of action for failure to pay wages weekly instead of bi-weekly under § 191. It found such a private right of action both expressly in the NYLL, and alternatively, by implication.

As to the "express" private right of action, no such right is set forth in § 191 itself. The First Department therefore looked to the catch-all provision of Article 6, § 198(1-a). The relevant portion of that section provides:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any *underpayment*, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages . . . .

---

right would be consistent with the legislative scheme." Ortiz v. Ciox Health LLC, 37 N.Y.3d 353, 360, 157 N.Y.S.3d 822, 826 (2021).

NYLL § 198(1-a) (emphasis added).  The First Department concluded that paying an employee every 14 days instead of every 7 days constituted an "underpayment" of wages.  Since the major issue when wages are paid every 14 days instead of every 7 days is liquidated damages plus interest for the time delay, the First Department recognized that the case was really about liquidated damages and attorneys' fees.  It held that "liquidated damages may be available under Labor Law § 198(1-a) to provide a remedy to workers complaining of untimely payment of wages, as well as non-payment or partial payment of wages."  Vega, 175 A.D.3d at 1146, 107 N.Y.S.3d at 288.

As to its alternative holding – that § 191 supports an implied private right of action – the Vega court held that § 191 met all three criteria for the implication of such a right, notwithstanding that the statute permitted the Commissioner of Labor to bring an enforcement action.  Vega, 175 A.D.3d at 1146-47, 107 N.Y.S.3d at 288-89.  The third factor of the implication test, the Court held, was met because "the creation of such a right would be consistent with the legislative scheme."  Id.

Since the Court of Appeals' decision in Konkur, lower federal courts have considered whether Konkur abrogated or overruled *sub silencio* the First Department's earlier decision in Vega.[3]  All of those lower federal court decisions have answered that question negatively.  See, e.g., Rosario v. Icon Burger Acquisition, LLC, No. 21-cv-4313, 2022 WL 17553319, at *5 (E.D.N.Y. Dec. 9, 2022); Rath v. Jo-Ann Stores, LLC, No. 21-cv-791, 2022 WL 17324842, at *7

---

[3] Although decisions of federal courts construing state law may also be considered, "no deference" is owed to a "district court's interpretation" of state law.  Reddington v. Staten Island Univ. Hosp., 511 F.3d 126, 133 (2d Cir. 2007).  The Court is not aware of any decision from a New York court that directly addresses whether Konkur abrogated or overruled Vega.  The question of whether a private right of action exists for violations of § 191 is currently before the Appellate Division, Second Department in Grant v. Global Aircraft Dispatch, Inc., No. 2021-03202.

(W.D.N.Y. Nov. 29, 2022). They distinguish Konkur on the theory, among others, that the violation of the anti-kickback statute, NYLL § 198-b, does not result in an "underpayment of wages", but the payment of wages every 14 days instead of every 7 days, as required by § 191, does.

"When deciding a question of state law," a federal court "look[s] to the state's decisional law, as well as to its constitution and statutes." Chufen Chen v. Dunkin' Brands, Inc., 954 F.3d 492, 497 (2d Cir. 2020) (citation omitted). "Where state law is unsettled, [a federal court is] obligated to carefully . . . predict how the state's highest court would resolve the uncertainty or ambiguity." Id. at 499 (citation omitted). In doing so, the court "is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." V.S. v. Muhammad, 595 F.3d 426, 432 (2d Cir. 2010).

I have no trouble finding that Vega's alternative holding that there is an implied right of action has been abrogated by Konkur. Vega simply assumed that if a plaintiff is a member of the class that the legislature intended to protect, and private enforcement would further the purposes of the statute – the first two requirements for implying a private right of action – it follows *a fortiori* that private enforcement would not be inconsistent with the statute. As Konkur shows, however, that assumption is wrong. Konkur made it clear that where the Legislature has already provided an enforcement mechanism, there is a strong likelihood that judicial creation of an additional remedy (private enforcement) may be inconsistent with the Legislature's intent.

That leaves us, then, with Vega's holding that § 191, read together with § 198, contains an express private cause of action. Although Konkur did not address the existence of an express

8

private cause of action arising from a kickback of wages, there are several reasons to doubt whether Vega's theory of an express cause of action survives Konkur.

First, what the First Department called "express" in Konkur isn't actually so express. There is no place in the Labor Law stating that an employee who is paid every two weeks instead of one week in violation of §191 may himself bring suit for the violation. Yet there are numerous provisions in the Labor Law that require no extrapolation to conclude that an employee may bring suit for a specific violation of the Labor Law. See N.Y. Lab. L. § 198(1-b) (private right of action for NYLL hiring notice provision); § 198(1-d) (private right of action for NYLL wage statements provision). Lacking such a specific authorization, what the First Department did was focus on the word "underpayment" in § 198(1-a) and conclude that a 7-day late payment is equivalent to failing to pay minimum wage or overtime. The analytical framework of Konkur might well require more of an "express" grant of private enforcement than the First Department found in Vega.

In addition, allowing private enforcement of § 191's requirement that certain employees be paid every two weeks but not, as Konkur holds, for paying compulsory kickbacks from wages under §198-b doesn't make much financial sense. Both a kickbacking-employee and a 7-day late-paid employee receive less money from their wages than they are supposed to have. Indeed, a kick-backing employee has a far more severe injury than a 7-day late-paid employee – the former loses that money forever (subject, of course, to litigation by the Commissioner), while the latter merely has a 7-day delay. Allowing the late-paid employee to maintain a private claim – for liquidated damages, no less – and not allowing any action for the permanent diversion of wages through kickbacks would create such a substantial disparity that it is hard to imagine the Legislature intended it.

9

Third, the New York Legislature must be presumed to have known what an unusual step it was taking in forcing employers, particularly national employers with operations in New York, to pay manual workers' wages weekly, and therefore left it to the Commissioner to balance the risk of driving businesses out of the state against the Legislature's desire that workers should be paid weekly – a result that could be obtained with negotiation, settlement, or administrative proceedings before resorting to litigation.  This is because § 191 is not just in derogation of the common law – it is in extreme derogation of the common law.  According to the United States Department of Labor, only nine states have some form of weekly requirement for paying wages.  Thirty-eight states either allow bi-weekly payment, like defendant here, or longer (many allow monthly payments), or have no statutory payment period at all.  See U.S. Department of Labor, "State Payday Requirements,", accessible at https://tinyurl.com/24b8p3ww.  Against this national backdrop, it makes perfect sense that the Legislature would exercise some caution and allow a public officer – the Commissioner of Labor – to determine whether to pursue action for a one-week delay in payment – especially considering the onerous consequence of liquidated damages – rather than private plaintiffs' attorneys.

Despite my doubts about the viability of Vega in light of Konkur, Konkur does not rise to the level of "persuasive evidence" that the Court of Appeals would reject Vega.  Konkur addressed an implied cause of action for a different and unrelated provision of the NYLL.  To the extent Konkur discussed § 191's timely payment provisions, it recognized that the private right of action provided for by § 198(1-a) "must relate to wage claims based upon violations of one or more of the substantive provisions of Labor Law article 6," and specifically cited § 191 as one such substantive provision.  See Konkur, 38 N.Y.3d at 44, 165 N.Y.S.3d at 6 (citation omitted).

10

I will therefore follow Vega to hold that plaintiff has a private right of action under §§ 191 and 198(1-a), at least pending further instruction from the New York State courts.

### III. Defendant's due process challenge is premature

Defendant argues that permitting plaintiff to recover liquidated damages in the amount of 100% of late-paid wages – here, approximately $36 million according to plaintiff's allegations – absent a showing of actual underpaying would violate the Fourteenth Amendment's Due Process Clause because "the penalty is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." See St. Louis, I.M. & S. Ry. Co. v. Williams, 251 U.S. 63, 67 (1919).

The Second Circuit has recognized the "dual punitive and compensatory effects of an award of liquidated damages under the [NYLL]." Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018) (internal quotations and citation omitted). Therefore, at least in part, "liquidated damages under the [NYLL] 'constitute a penalty' to deter an employer's willful withholding of wages due." Reilly v. Natwest Mkts. Grp., Inc., 181 F.3d 253, 265 (2d Cir. 1999) (quoting Carter v. Frito–Lay, Inc., 74 A.D.2d 550, 551, 425 N.Y.S.2d 115, 116 (1st Dep't 1980)); see also Yun Hong Hua v. Eight Star Inc., No. 15-cv-0275, 2015 WL 2354322, at *2 (E.D.N.Y. May 15, 2015) ("[U]nder the New York Labor Law, liquidated damages are like punitive damages, having a deterrent purpose.").

Although the Due Process Clause prohibits excessive statutory penalties, see Williams, 251 U.S. at 67, defendant's due process challenge is premature. No damages have been awarded, so there is no award for me to assess for excessiveness.[4] See Hodel v. Virginia Surface

---

[4] There is some uncertainty as to what standard should apply in determining whether statutory penalties are unconstitutionally excessive, and, more specifically, whether the standard articulated by the Supreme Court in BMW

11

Min. & Reclamation Ass'n, Inc., 452 U.S. 264, 304 (1981) (defendants' challenge to civil penalty provisions in Surface Mining Control and Reclamation Act premature because none of the defendants "have had civil penalties assessed against them"); Ashby v. Farmers Ins. Co. of Oregon, 592 F. Supp. 2d 1307, 1316 (D. Or. 2008) (due process challenge to liquidated damages in FCRA class action premature where statutory damages had not yet been awarded); Ramirez v. Midwest Airlines, 537 F. Supp. 2d 1161, 1170 (D. Kan. 2008) (due process challenge in FCRA class action premature when "there [was] not yet any damage award for the court to review").

In addition, "[a] motion to dismiss is addressed to a 'claim' – not to a form of damages." Farina v. Metro. Transportation Auth., 409 F. Supp. 3d 173, 220 (S.D.N.Y. 2019). Thus, even if the issue were ripe, I would not grant the relief requested by defendant to deny plaintiff a certain type of damages on a motion to dismiss. And even if I found that defendant's challenge has merit, defendant does not provide any reason as to why I could not order remitter or partially vacate an excessive award, if there is one, as opposed to denying an award in its entirety. See Montera v. Premier Nutrition Corp., No. 16-cv-06980, 2022 WL 3348573, at *1 (N.D. Cal. Aug. 12, 2022) (partially vacating statutory damages award under Williams).

Defendant argues that its constitutional challenge can be decided now because, unlike putative damages, which can only be determined after trial, plaintiff has already quantified the amount she seeks by way of statutory damages. But plaintiff is a long way from turning her

---

of North America v. Gore, 517 U.S. 559 (1996), for reviewing punitive damage awards should apply. In Rodrigue v. Lowe's Home Centers, LLC, a judge in this district held that a defendant's due process challenge to the NYLL's liquidated damages provision was premature because the Gore factors could not be analyzed on a motion to dismiss. No. 20-cv-1127, 2021 WL 3848268, at *6 (E.D.N.Y. Aug. 27, 2021). But there are important differences between punitive damage awards and statutory damages, and the majority of courts to consider the issue have declined to apply the Gore factors to a review of statutory damages. See John Wiley & Sons, Inc. v. Book Dog Books, LLC, 327 F. Supp. 3d 606, 635-36 (S.D.N.Y. 2018) ("Although not yet considered by the Second Circuit, other circuits agree that the Gore factors are inapplicable to statutory damages awards."). Regardless of what standard applies, defendant's challenge is premature.

prayer for $36 million in liquidated damages into an actual verdict. She may lose this case, or she may fail to prove that the class is anywhere near as large as she claims or that defendant violated NYLL § 191 at all. Defendant may also assert, as a complete defense to liquidated damages, that it had a "good faith basis for believing that . . . [it] was in compliance with the law." See N.Y. Lab. L. § 198(1-a). Indeed, the fact that this provision of New York law is such an outlier as compared to other states in the country may by itself defeat a finding of willfulness. Therefore, in the absence of an actual damages award and factual record, the Court declines to rule on defendant's due process challenge.

## CONCLUSION

For these reasons, defendant's motion to dismiss is denied.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
       December 29, 2022